UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROTECT THE PUBLIC'S TRUST,

*Plaintiff*,

v.

UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT,

*Defendant*.

Civil Action No. 25 - 333 (LLA)

**MEMORANDUM OPINION**

Plaintiff Protect the Public's Trust ("PPT") filed this suit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the United States Agency for International Development ("USAID") to comply with its request for records related to funding to the Palestinian territories.  ECF No. 3.[1]  USAID has moved to dismiss, arguing that PPT's request fails to reasonably describe the records sought and imposes an unreasonable burden.  ECF No. 7.  For the reasons explained below, the court will grant USAID's motion and dismiss the case.

      I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following factual allegations drawn from PPT's complaint, ECF No. 3, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  PPT is a nonprofit organization that "seeks to promote transparency and broadly disseminate information so that the American people can evaluate the integrity and ethical conduct of those who act in their name."  ECF No. 3 ¶ 4.

---

[1] The court cites the corrected version of the complaint.  *See* Errata, ECF No. 3.

On October 15, 2024, PPT submitted a FOIA request to USAID. *Id.* ¶ 6. For the period between July 13, 2022 and "the date this request is processed," PPT requested:

> [R]ecords of communications to, from, and including the list of custodians with the lists of internal and external agencies/individuals about the listed subject matters.
>
> Custodians:
> a) Officials in the Immediate Office of the Administrator
> b) Bureau for the Middle East
> c) Samantha Power
>
> Internal Officials:
> i. USAID Officials
>
> External entities:
> I.    Officials in the White House
> II.   Officials in the Department of the Treasury's Office of Foreign Assets Control including, but not limited to, Brad Smith
> III.  Ambassador to the United Nations
> IV.   Members of The National Security Council
> V.    Officials in The United Nations Relief and Works Agency
> VI.   Officials with the United Nations
> VII.  Officials in the Department of State, Office of Threat Finance Countermeasures
> VIII. Officials in the Department of State, Office of Palestinian Affairs
>
> Subject matters:
> 1. Taylor Force Act
> 2. Funding to Palestinian territories, Gaza, West Bank, Palestinian Authority

ECF No. 3-2, at 1-2.[2] The same day, USAID sent an email to PPT acknowledging receipt of the request and stating that it had been assigned a request number. ECF No. 3 ¶ 8. The next day, USAID notified PPT that the request's status had been changed from "Received" to

---

[2] The Taylor Force Act imposed limits on the distribution of foreign aid and other assistance "for the West Bank and Gaza that directly benefits the Palestinian Authority." Taylor Force Act, Pub. L. No. 115-141, § 1004(a), 132 Stat. 1143, 1144 (2018) (codified at 22 U.S.C. § 2378c-1).

"On Hold – Need Info/Clarification" and that PPT was required "to take immediate action to clarify the request by providing further detail describing the records sought." *Id.* ¶ 8-9. USAID's email "did not provide any information about parts of the request USAID required more clarification on." *Id.* ¶ 9.

PPT responded on October 24, 2024, asking "what clarification USAID required" and stating that it was "seeking communications between the listed officials regarding the listed subject matters." *Id.* ¶ 10. USAID requested that PPT provide email domains for the external entities listed in the request, excluding "Officials in the United Nations Relief and Works Agency." *Id.* ¶ 11. PPT provided the requested email domains, as well as "additional domains for the Ambassador to the United Nations." *Id.* ¶ 12. USAID subsequently notified PPT that the request's status had been updated to "Received" and then to "Assigned for Processing." *Id.* ¶ 13. USAID also "provid[ed] details on the request's assignment to a FOIA specialist" and invoked an extension on the twenty-day statutory time limit for responding to the request due to "unusual circumstances." *Id.*; *see* 5 U.S.C. § 552(a)(6)(B)(i)-(iii). PPT did not hear from USAID again regarding its request. *See* ECF No. 3 ¶¶ 14-16.

PPT filed this FOIA action against USAID in early February 2025, alleging that USAID was "wrongfully withholding non-exempt agency records requested by PPT." *Id.* at 5-6. PPT alleged that USAID had not "produced responsive documents," had not "communicated the scope of documents it intend[ed] to produce or withhold—along with the reasons for any withholding," and had "not informed PPT of its ability to appeal any adverse portion of its determination." *Id.* ¶ 16. PPT also alleged that it had constructively exhausted its administrative remedies "[t]hrough

3

USAID's failure to make a determination within the time period required by law." *Id.* ¶ 18. PPT sought injunctive relief ordering USAID to produce responsive records. *Id.* at 6.[3]

In April 2025, USAID moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that PPT's underlying request was too broad and too burdensome to constitute a valid FOIA request. ECF No. 7. The motion is fully briefed. ECF Nos. 7 to 9.

## II.    LEGAL STANDARDS

### A.    FOIA

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). FOIA requires an agency to release non-exempt records if it receives a request that "(i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). FOIA places the initial burden of drafting a reasonably descriptive request on the plaintiff. *See Corley v. Dep't of Just.*, 998 F.3d 981, 989 (D.C. Cir. 2021). Accordingly, an agency's obligations under FOIA begin only "once an agency has received a proper FOIA request." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013).

---

[3] USAID effectively ceased operations on February 23, 2025, and its functions were transferred to the Department of State. *See* USAID, Notification of Administrative Leave, https://perma.cc/9ZZE-QDLC; Press Release, Marco Rubio, Sec'y of State, U.S. Dep't of State, *On Delivering an America First Foreign Assistance Program* (Mar. 28, 2025), https://perma.cc/H2QJ-4WVC. The court will refer to the agency as USAID for purposes of this case.

A plaintiff seeking judicial review under FOIA must generally exhaust its administrative remedies before filing suit. *Wilbur v. Cent. Intel. Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). "[F]ailure to comply with FOIA and agency requirements—by, for example, failing to reasonably describe the records—'amounts to a failure to exhaust administrative remedies, which warrants dismissal.'" *Frost Brown Todd LLC v. Ctrs. for Medicare & Medicaid Servs.*, No. 21-CV-2784, 2024 WL 450056, at *2 (D.D.C. Feb. 5, 2024) (quoting *Dale v. Internal Revenue Serv.*, 238 F. Supp. 2d 99, 102-03 (D.D.C. 2002)). FOIA's exhaustion requirements are jurisprudential, not jurisdictional, and "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar.'" *Wilbur*, 355 F.3d at 677 (quoting *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003)).

While FOIA cases are typically decided on motions for summary judgment, *see Leopold v. Dep't of Def.*, 752 F. Supp. 3d 66, 74 (D.D.C. 2024), a motion to dismiss under Federal Rule of Civil Procedure 12 can be the appropriate vehicle for determining whether the plaintiff has filed a procedurally compliant FOIA request and exhausted its administrative remedies, *see Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 922 F.3d 480, 487-88 (D.C. Cir. 2019); *Hidalgo*, 344 F.3d at 1260.

### B.      Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

5

for the misconduct alleged." *Id.*  In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  The court also does not accept legal conclusions or inferences that are unsupported by the facts.  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### III.   DISCUSSION

A FOIA request must "reasonably describe[]" the records being requested.  5 U.S.C. § 552(a)(3)(A).  A request meets this requirement if it is "sufficient [to] enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort."  *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990) (quoting H.R. Rep. No. 93-876 (1974)).  "Broad, sweeping requests lacking specificity are not sufficient."  *Dale*, 238 F. Supp. 2d at 104.  But even where a request has "sufficient precision to enable the agency to identify [the records]," "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'"  *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of*

6

*Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. Cent. Intel. Agency*, 607 F.2d 339, 353 (D.C. Cir. 1978)). That is especially so where the requester seeks "a vast quantity of material" that is not tailored to the requester's purpose for requesting the material. *Id.* Because it is "the requester's responsibility to frame [its] request[] with sufficient particularity to ensure that searches are not unreasonably burdensome[] and to enable the searching agency to determine precisely what records are being requested," an agency is not required to respond to a request that falls short in either respect. *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 248 (second alteration in original) (quoting *Assassination Archives & Rsch. Ctr., Inc. v. Cent. Intel. Agency*, 720 F. Supp. 217, 219 (D.D.C. 1989)).

USAID contends that PPT's request both fails to reasonably describe the records it seeks and would require an unreasonably burdensome search. ECF No. 7, at 5-11. Because the court agrees that PPT has not reasonably described the records it requests, the court will dismiss the complaint without reaching USAID's argument about burden.

### A.     Whether PPT "reasonably describe[d]" the records it seeks

USAID argues that PPT's request "effectively asks for all records and communications among an unquantified number of unidentified [USAID] employees and an unquantified number of unidentified external employees of over eight organizations." *Id.* at 5. The court agrees that PPT's request does not identify *whose* communications are being sought with sufficient precision. A request for communications between specific custodians and unspecified "*Officials*" of various entities like USAID, the White House, and the United Nations, ECF No. 3 ¶ 6 (emphasis added), is too vague to allow an agency professional to "determine precisely what records are being requested," *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982)).

The court considered a FOIA request that used a similar phrase in *Gun Owners of America, Inc. v. Federal Bureau of Investigation*, 594 F. Supp. 3d 37 (D.D.C. 2022). There, the plaintiff sought "'records of all communications between the FBI and' the Governor, Lieutenant Governor, and Attorney General of Virginia, their respective 'Office[s],' and '*agents and employees of the same*.'" *Id.* at 43 (alteration in original) (emphasis added). The court concluded that the request failed to sufficiently identify whose communications were being sought because the phrase "agents and employees" was a "vague catch-all" with "a wide range of plausible meanings." *Id.* at 43-44. As the court explained, the phrase could plausibly refer to the named offices of the Virginia Governor, Lieutenant Governor, and Attorney General, "rendering the catch-all term superfluous," or it could "apply to every individual working for Virginia's executive branch." *Id.* at 44. The court concluded that the request did not provide the agency with sufficient guidance to choose between these plausible meanings and determine who qualified as an "agent" or "employee." *See id.* at 44-45.

Here, too, PPT's request uses a "vague catch-all" term—"Officials"—with multiple plausible meanings. ECF No. 3-2, at 1-2. The term could be so broad as to encompass *any* employee of the named entities. *See Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 86 (D.D.C. 2021) (observing that "[a]nyone employed at [federal] agencies would qualify as an 'official'"). Alternatively, the term could apply to those within a governmental entity who are "elected or appointed to carry out some portion of a government's sovereign powers" or, more generally, to those "authorized to act for a[n] . . . organization." *Official*, Black's Law Dictionary (12th ed. 2024). And, as in *Gun Owners*, the language of PPT's request "provides no way to determine *which* of these plausible meanings to apply." 594 F. Supp. 3d at 44. Because the request fails to identify "a discrete agency or set of employees," *id.*, it leaves USAID employees

with little guidance as to which employees of USAID, the White House, the United Nations, and various State Department and Treasury Department offices are "officials" of those entities.  While PPT may have "clearly identified internal and external entities" in its request, ECF No. 8, at 1, it has not identified the *employees* of those entities whose communications it seeks.

This problem is further exacerbated by the fact that the term "officials" "can take on different meanings based on the individualized contexts of each of the [named] organizations." *Protect the Pub.'s Tr. v. U.S. Dep't of Lab.*, No. 22-CV-2849, 2023 WL 6160014, at *3 (D.D.C. Sep. 21, 2023) (finding impermissibly vague a request that used the phrase "any employee or representative" to identify individuals associated with twenty-five named organizations).  For example, the meaning of "official" may differ in the context of executive-branch entities like USAID and the State Department than in the context of an intergovernmental agency like the United Nations.  Does "Officials in the White House" include all staff within the Executive Office of the President, or only senior staff?  Does it extend to officials in the President's Cabinet?  Who among the United Nations' 133,000 employees is an "Official[] with the United Nations"?[4]  *See* ECF No. 7, at 9.  PPT's request provides no criteria for ascertaining which officials are included in its records request, "leav[ing] the unfortunate FOIA processor . . . in a hopeless muddle without clear guidance about what documents are being sought." *Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 85.

---

[4] When naming other external entities, PPT refers to officials "*in*" those agencies. *See, e.g.*, ECF No. 3 ¶ 6 (referring to "Officials *in* the White House" and "Officials *in* [t]he United Nations Relief and Works Agency" (emphases added)).  However, for the United Nations, the request refers to "Officials *with* the United Nations." *Id.* (emphasis added).  It is not clear from the face of the request whether it applies to officials "in" the United Nations or also encompasses officials who are associated with, but not necessarily employed by, the United Nations.  PPT's request is devoid of any criteria for determining who is *associated with* the United Nations, and this imprecision adds to the vagueness of the request.

PPT's attempts to defend its request as "narrowly tailored," ECF No. 8, at 3, fall short and, indeed, reveal additional problems. First, PPT contends that it seeks communications with only a "finite group of *at most* 30 custodians" at USAID, *id.* at 1, but PPT nowhere identifies who these custodians are. While this court, like an agency, "has a duty to construe a FOIA request liberally," *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), it must also read PPT's request "as drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). As USAID points out, it is "entirely unclear how [PPT] calculated that only thirty custodians are at issue." ECF No. 9, at 1. PPT does not specify who "Officials in the Immediate Office of the Administrator" or the "Bureau for the Middle East" are, and its list of custodians does not specify any names or roles, aside from former USAID Administrator Samantha Power. ECF No. 3 ¶ 6. PPT's assertion that its request is "limited to officials communicating with the named custodians," ECF No. 8, at 4, therefore means very little when PPT has failed to name those custodians in the first place. But even if PPT is correct that it has appropriately limited the custodians from whom it is requesting records, that does not solve the vagueness of the term "officials" used to describe the external sources whose communications with those custodians are being sought. Indeed, in *Gun Owners*, the request identified a clear custodian—the FBI—but the court nevertheless concluded that the request did not reasonably describe the recipients of the requested communications with the FBI. *See* 594 F. Supp. 3d at 43-45.

Second, PPT argues that in identifying the external sources from which it is seeking communications, it has identified "specific . . . roles" and names, such as Brad Smith of the Treasury Department's Office of Foreign Assets Control and the U.S. Ambassador to the United Nations. ECF No. 8, at 4. But PPT's identification of certain "officials" by name or position does

10

not cure the defects in its otherwise vaguely worded request—especially when PPT is requesting records from "Officials in the Department of the Treasury's Office of Foreign Assets Control including, *but not limited to*, Brad Smith." ECF No. 3 ¶ 6 (emphasis added); *see Jud. Watch, Inc. v. U.S. Dep't of State*, No. 23-CV-2964, 2025 WL 915533, at *3 (D.D.C. Mar. 26, 2025) (explaining that the phrase "*but is not limited to*" did not "impos[e] any limitations . . . because [the requester] stated expressly that the request is *not limited* in that way"). When assessing whether USAID has responsive records from someone in Treasury's Office of Foreign Assets Control other than Mr. Smith, an agency employee would still need to determine who in that office is an "Official." *See Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 86. The same is true for PPT's requests for records from "Officials" in the White House, the United Nations,[5] and two State Department offices, which contain no specific names. ECF No. 3 ¶ 6.

Third, PPT asserts that it sufficiently clarified its request by providing email domains for the external entities in response to USAID's request. ECF No. 8, at 8. This argument might help PPT if it had sought communications from the named entities rather than "officials" of those entities. For example, in *Bader Family Foundation v. U.S. Equal Employment Opportunity Commission*, No. 23-CV-976, 2025 WL 915563 (D.D.C. Mar. 26, 2025), the court held that a request seeking communications between Commissioners of the Equal Employment Opportunity

---

[5] In a similar vein, PPT argues that it is not seeking communications with "the entire [United Nations]," but only "specific external offices or roles," such as "UN Relief and Works Agency officials." ECF No. 8, at 7-8. But PPT's FOIA request seeks records from both "Officials in The United Nations Relief and Works Agency" *and* "Officials with the United Nations." ECF No. 3 ¶ 6. PPT cannot amend its FOIA request in its opposition brief, and the court must "focus[] on the *language* of the request" submitted to the agency. *Leopold v. U.S. Immigr. & Customs Enf't*, 560 F. Supp. 3d 189, 201 (D.D.C. 2021); *see Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 35 (D.D.C. 2019) ("Litigation does not . . . give a requester the opportunity to rewrite the request."). But even if PPT could amend its request during litigation, USAID would still lack the necessary guidance to identify "Officials" within the United Nations Relief and Works Agency.

Commission ("EEOC") and particular organization domains was not impermissibly vague. *Id.* at *7. The court explained that an agency employee could simply look to see whether the record came from one of the specific domains to determine whether it was responsive to the request, distinguishing the request from the problematic request for "agents and employees" in *Gun Owners*. *Id.* Here, even with the email domains, a USAID employee would still need to determine whether the communication is with an "official" of that entity. Put another way, limiting the request to a specific email domain within the United Nations Relief and Works Agency does nothing to answer the question whether a communication from that domain involved an agency "official." Accordingly, even if PPT's request were limited to the email domains it provided to USAID, its "catch-all request for communications with all ['officials'] would still be impermissibly imprecise." *Gun Owners*, 594 F. Supp. 3d at 45.

    Finally, PPT maintains that its request contains subject-matter and temporal limitations that were absent in the FOIA requests at issue in many of USAID's cited cases. ECF No. 8, at 5-7. While USAID appears to concede that PPT's request is appropriately time-limited, *see* ECF No. 9, at 2, it disputes whether PPT sufficiently identified the subject matter of records being sought, *id.* (arguing that the "subject matter of funding to 'Palestinian territories, Gaza, West Bank, Palestinian Authority' is entirely unclear and unspecified because it does not specify funding from who, to whom, or for what purpose" (quoting ECF No. 1 ¶ 6)). In USAID's view, it is not clear from PPT's request whether PPT is seeking communications concerning aid provided only by USAID or instead "all U.S. aid to the Palestinian people" and whether PPT's request is limited to "direct aid to the Palestinian people" or encompasses "the hundreds of millions of U.S. contributions to the U.N. Relief and Works Agency for Palestine Refugees in the Near East." *Id.* at 3. The court agrees with USAID. The breadth of the term "[f]unding to Palestinian territories,

Gaza, West Bank, Palestinian Authority," ECF No. 3 ¶ 6, could be read to encompass funding from *any* source to those areas and entities, making it impossible for an agency employee to "determine precisely what records are being requested," *Kowalczyk*, 73 F.3d at 388 (internal quotation marks omitted); *see, e.g.*, *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 62 (D.D.C. 2013) (explaining that requests for records relating to the dissolution of sanctions against Iran, China, Venezuela, and Russia were overly broad, as they "would not even require *actual* dissolution of sanctions" for a record to be potentially responsive); *Pinson v. U.S. Dep't of Just.*, 245 F. Supp. 3d 225, 244-45 (D.D.C. 2017) (concluding that a request for all documents concerning two prison gangs generated during the prior decade was "too vague").[6]  It is also unclear whether *attempts* at providing funding to the Palestinian territories would fall within PPT's request, and the broad scope of the request could encompass not only records concerning proposed or actual funding to the Palestinian territories, but also records of government officials' opinions, proposals, and plans about such funding.  *Cf.* ECF No. 3-2, at 5 (PPT's FOIA request stating that PPT sought records to "educate the public" about whether "high-ranking officials . . . are properly and wisely considering the legal restrictions on expending federal funds that may be used to support" international terrorism).  And, while PPT's request is time-limited with respect to the dates the requested communications were sent or received, there are no temporal limits cabining the timing of the funding.  *See* ECF No. 3 ¶ 6.  But, at bottom, even if PPT's request were

---

[6] By contrast, if PPT had sought records seeking any records that mention the Palestinian territories, Gaza, the West Bank, or the Palestinian Authority, agency employees would be able to determine what records are being requested, regardless of how onerous a search might be.  *See Shapiro v. Cent. Intel. Agency*, 170 F. Supp. 3d 147, 154 (D.D.C. 2016) (concluding that a request for agency records that mentioned "Nelson Mandela or his three listed aliases" reasonably described the records being sought).

sufficiently defined in terms of time and subject matter, PPT's request for communications with all "officials" of the external entities would still be insufficiently precise.[7]

### B. Whether PPT's request poses an unreasonable burden

USAID also argues that PPT's request is invalid because it would require an unreasonably burdensome search. ECF No. 7, at 8-11. While the court would ordinarily address both of USAID's arguments for dismissal, the question of a search's burden is generally better suited for resolution at summary judgment. *See Protect the Pub.'s Tr.*, 2023 WL 6160014, at *2 n.2. In any event, because USAID's argument about the burden of the search rests principally on PPT's use of the "vague catch-all" term "officials," *see* ECF No. 9, at 3, which the court has already addressed, the court need not reach the question of burden.

### IV. CONCLUSION

For the foregoing reasons, the court will grant USAID's Motion to Dismiss, ECF No. 7. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date: March 6, 2026

---

[7] Because PPT cannot cure this deficiency by amending its complaint, the court will dismiss the complaint with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).